———————o———————

No. 4418.

(Court of Appeal, Parish of Orleans.)

## A. MADERE, vs. SUCCESSION OF LOUIS ORY.

1. A contract, by the terms of which, one party agrees to use his influence in behalf of and to support another for a public office, on condition that the fees of the office will be divided with him, is void as against public policy and cannot be judicially enforced.
2. Courts, in aid of public policy, will notice without plea the illegality of the purpose, if manifested by the record, and they will leave the litigants where their conduct has placed them and dismiss the suit.
3. Articles 1891 and 1892 R. C. C. limit the operation of Article 1965 to cases where the benefit arises from a lawful act; hence, the maxim that one ought not to enrich himself at the expense of another is not applicable, where the benefit arises from an unlawful act.
4. To allow one to do indirectly in the guise of an action on a quantum meruit what the law forbids him to do directly, would be to countenance a subterfuge and to sacrifice substance to form.
5. The inevitable result would be to perpetuate an evil requiring complete eradication, to infuse corruption in the body politic, and to make good government difficult, by allowing public offices to become the objects of bargain and barter to the detriment of the most sacred interests of society.

Appeal from Twenty-eighth Judicial District Court, Parish of St. Charles.

H. N. Gautier and R. J. Perkins, Plaintiff and Appellant.

L. H. Marrero, Jr., and A. E. Billings, Defendant and Appellee.

DUFOUR, J. The plaintiff, who was chief deputy of Ory,

late sheriff of the Parish of St. Charles, claimed of the latter's succession, a certain sum alleged to be due as compensation for his services under an agreement, and averred that, if the said agreement should be declared illegal, he was entitled to recover the same on a *quantum meruit*.

An exception of inconsistency being made and sustained, plaintiff elected to prosecute his claim on a *quantum meruit*.

An exception of no cause of action was then made and was sustained by the lower Court, but, on appeal to this Court, the exception was overruled and the cause was remanded.

In remanding the cause, we said: "It may be on the merits the defendant may expressly plead and show a contract contrary to public policy to defeat the plaintiff's suit on a *quantum meruit*, if it be permitted to successfully invoke such a contract to retain the fruits of another's labor, but that question has not been presented to the lower court or to this Court as yet."

See No. 3668.

When the cause again came up in the District Court, the defendant, after pleading the general issue, filed the following specific answe r:

"She specially admits and alleges that plaintiff entered into a "contract with Lewis Ory, her late husband, on October 26, "1899, substantially as alleged in plaintiff's original petition, and "which contract was in writing and signed by said plaintiff and "said Lewis Ory, an original of which is now in the possession "of said plaintiff, and was in the words and figures following— to-wit:

" 'PARISH OF ST. CHARLES,

" 'October 26, 1899.

"We, Lewis Ory and A. Madere, both of the Parish of St. " 'Charles, desirous of preventing any serious differences in the " 'Democratic Party in the Parish of St. Charles on account of " 'a number of candidates for tha office of Sheriff and Tax Col- " 'lector of St. Charles Parish, and, considering further, that " 'friends of each of us have persistently urged each of us, res- " 'pectively, to come forward as a candidate for said office, agree " 'as follows:

" 'A. Madere agrees to support Lewis Ory in every way for " 'the office of Sheriff and Tax Collector of St. Charles Parish

189

"'at the election to be held in April, 1900, and agrees to influence "'his friends, in every way in his power, to support the said Ory "'for the Democratic nomination and election to said office.

"'Lewis Ory agrees, in case of his election to the office of "'Sheriff and Tax Collector of St. Charles Parish in April, 1900, "'for four (4) years, to appoint A. Madere his chief deputy and "'to divide the net proceeds of said office of Sheriff and Tax Col- "'lector, after all expenses are paid, with the said A. Madere, "'share and share alike for the full term of office.

"'Lewis Ory further agrees to appoint Richard Madere, during "'his term of office so elected, to the office of deputy and jailer.

"'It is understood and mutually agreed that the expenses inci- "'dent to the election of Sheriff, to be held in April, 1900, shall "'be borne share and share alike by the said Lewis Ory and A. "'Madere.

"'Lewis Ory and A. Madere agree to make no opposition, and "'to urge their friends to make no opposition, to the one set of "'delegates to be eventually chosen by the supporters of the said "'Lewis Ory to the Parish Convention which shall be called by "'the Democratic Parish Executive Committee of St. Charles, to "'be held on a date to be fixed by said committee, and to support "'in every way in their power the nominee of the said Democratic "'Convention.

"'This signed in duplicate this 20th day of October, 1899.

"'LEWIS ORY,

"'A. MADERE.'

"'That any and all services rendered by plaintiff, as chief "'deputy Sheriff for said parish, as deputy Sheriff, and of said "'Lewis Ory, Sheriff of said Parish, for the years 1900, "'1901, 1902 and during the month of January, 1903, were ren- "'dered pursuant to, under, and in virtue of, said contract, and "'he cannot recover for such services under a quantum meruit.

"Wherefore, she prays that plaintiff's demand be rejected and "his suit dismissed, with costs, and for general relief."

From a judgment rejected the plaintiff's demand, the present appeal has been taken.

The question now presented is therefore the one specially left open in our former opinion; can there be recovery on a *quantum meruit* where there was a contract void as being *contra bonus mores.*

190

Counsel for plaintiff frankly avow that they elected to sue on a *quantum meruit* because "we (they) rest assured that the contract alleged by the defendant is *contra bonus mores* and insufficient to support an action at law."

The evidence shows that the contract alleged was made by the parties, was never abandoned by them, that all the services rendered and compensation received was under the terms of the contract.

In the case of Glover vs. Taylor, 38 An. 638, the Court said:

"It is the duty of the Sheriff under the law, to make the best appointment in his power in his judgment at the time of making the appointment; and it is against public policy and adverse to the efficient performance of the duties of his office, that he has entered into a binding agreement beforehand to appoint a certain person without any regard to his qualifications and to deprive himself of the power of making the appointment of others if needed, and of removing the appointee, if, in his judgment, the removal becomes necessary. Public officers cannot be the object of a contract of sale or cession.

Our conclusion is that the agreement sought to be enforced is one entered into in open violation of good order and public policy, and the enforcement of which would lead to consequences subversive of the best interests of society and have a direct tendency to destroy the safeguards of the ballot-box."

In Maguire vs. Corwine, 101 U. S. 111, the Supreme Court of the United States used the following language, as to the law touching contracts like the one here in question."

"Frauds of the class to which the one here disclosed belongs are an unmixed evil. Whether forbidden by a statute or condemned by public policy, the result is the same. No legal right can spring from such a source. They are the sappers and miners of the public welfare, and of free government as well. The Latter depends for its vitality upon the virtue and good faith of those for whom it exists and of those by whom it is administered. Corruption is always the forerunner of despotism.

In Trist vs. Child, while recognizing the validity of an honest claim for services honestly rendered, this court said: "But they are blended and confused with those which are forbidden; the whole is a unit and indivisible. That which is bad destroys that which is good, and they perish together. Where the taint exists

191

it affects fatally, in all its parts, the entire body of the contract. In all such cases *hotior conditio defendentis.*. Where there is turpitude the law will help neither party."

The rule of law is that where one sues on a *quantum merit* he cannot recover if the defendant sets up and proves a contract.

But it is claimed that the defendant has no right to urge his own turpitude and assert in self-protection an immoral contract.

This is not a correct statement of the proposition actually presented. Courts, in aid of public policy and the law, will notice irrespective of the pleadings that the controversy submitted for adjudication grows out of illegal purposes, and, if that illegality be manifested by the record, courts will notice it without plea, leave the parties where they stand and dismiss the suit. Contentions originating in unlawful purposes are not to be brought into Courts of Justice. 47 An. 826.

It is also claimed that the moral maxim that one ought not to enrich himself at the expense of another estops defendant from repudiating liability for the benefits received.

Arts: 1891 and 1892 R. C. C., limit the operation of Art. 1965 to cases where the benefit arises from a lawful act and the maxim is not applicable where it arises from an unlawful act. Hen Dig. p. 1008, No. 11.

Furthermore, a principle intended to apply to the private relations of individuals with one another must necessarily yield to the requirements of the public welfare and the dictates of public policy.

What parties are forbidden by law to do directly, they may not do indirectly. To allow one to recover in the guise of an action of a *quantum meruit* what he cannot recover under his contract, because of its immorality, would be the judicial sanction of a public wrong. A subterfuge would be successful and substance would be sacrificed to form.

The inevitable result would be to perpetuate an evil requiring complete eradication, to countenance corruption in the body politic, and to make good government difficult by allowing public offices to become the objects of bargain and barter to the detriment of the most sacred and precious interests of society.

The litigants do not come to us with clean hands; we shall leave them where their conduct has placed them.

Judgment affirmed.